In the Matter of MICHAEL H. GRAE, an Attorney, Respondent.

Second Department, February 7, 1940.

*Harold M. Kennedy* [*Robert Abelow* and *Murray M. Halwer* with him on the brief], for the motion.

*Stephen Callaghan* [*Ralph Stout* with him on the brief], for the respondent.

JOHNSTON, J. The facts as to the origin and the reason for the secret inquiry which this court directed to be made by the Supreme Court, at a Special Term thereof, concerning the unlawful and unethical practices impairing the due administration of justice in Richmond county, are stated in the majority opinion in *Matter of Ellis* (258 App. Div. 558), decided herewith.

Respondent, a member of the bar for sixteen years, residing and having an office in Richmond county, was requested to attend before the court and testify. He appeared before the Special Term on July 14, 1938, and was sworn. He testified that he had a conversation with Harold M. Kennedy, Esq., who had been designated to assist Mr. Justice HOOLEY in conducting the investigation, and told him he would not waive immunity but, at the direction of the court, he was willing to answer all questions and produce all his records. He also admitted that if that course was followed he knew he would receive immunity from any prosecution. He reiterated that if

he testified he was entitled to immunity, and stated he had been advised by counsel not to sign a waiver.

Subsequently charges embodying, in substance, respondent's conduct before the Special Term were made to this court. It was charged that by his conduct respondent willfully concealed and intended to conceal facts and deeds, either connected with his practice of the law or otherwise; that his conduct and concealment were in part a mere pretext to enable him to withhold information which it was his duty to divulge; that by his conduct and concealment respondent endeavored to and did impede and in part defeat the inquiry.

Respondent in his answer repeats, in substance, his testimony before the Special Term, and alleges that in refusing to sign a waiver of immunity he was acting under advice of counsel and in good faith, and in the honest belief that such course was necessary to protect and maintain his constitutional rights and privileges.

On December 13, 1938, the matter was referred to an official referee to take proof and report with his opinion. On the hearing before the referee the respondent testified that, as a result of rumors he had heard and newspaper articles he had read, he understood that the grand jury was going to investigate " all alleged crimes committed by lawyers in Richmond County;" and that he heard " rumors " to the effect that this court was to create a Special or Trial Term, with a grand jury, to " investigate into alleged criminal practices of lawyers in Staten Island." Respondent also testified that because of these rumors and newspaper articles he feared that, although innocent, he might be confronted " with things like that," and, therefore, following the advice of counsel, he refused to sign the waiver of immunity. Respondent, on his direct examination, also said the waiver he was requested to sign was too broad; but on cross-examination he admitted that he never suggested that the waiver be changed; and he admitted he did not base his refusal to sign it on that ground. Respondent also admitted that prior to his appearance at the Special Term he conferred with Walsh, Ellis and Bregoff, attorneys, who also were requested to testify as to whether they should waive immunity if they were requested to testify at the inquiry.

The referee found the charges were established and that, in refusing to sign a waiver of immunity and to testify at the inquiry unless under circumstances that would result in his gaining immunity, the respondent was acting in bad faith; that his course of conduct was a mere pretext to withhold information which it was his duty to divulge and was intended to and did impede and, in part, defeat the investigation. The referee also found that in taking the posi-

tion he did, the respondent and the others mentioned were acting in concert.

The record justifies the findings of the referee. When respondent appeared before the Special Term he had no knowledge of what had been testified to either against him or any one else and, as far as he knew, no one connected with the inquiry had suggested that a crime had been committed. Nevertheless, he refused to testify unless he was granted immunity. That respondent had no reason to apprehend his answers would expose him to punishment for crime is clear from his own testimony. Before the referee, in answer to questions put to him by his counsel, respondent testified: " Q. And did you, at any time, have any notion or did you express to any one your fear of an investigation in the proceeding which was being conducted by Judge Hooley? A. You mean with respect to anything I ever did? Q. Yes. A. I was never afraid of anything I ever did."

We hold that the charges were proved and, for the reasons stated in *Matter of Ellis (supra)*, we conclude that respondent was guilty of professional misconduct or conduct prejudicial to the administration of justice, for which he must be disciplined.

The respondent should be suspended from the practice of the law for a period of six months.

ADEL and CLOSE, JJ., concur; LAZANSKY, P. J., with whom TAYLOR, J., concurs, dissents in opinion and votes to deny the motion to confirm the report of the official referee and to dismiss the charges.

LAZANSKY, P. J. (dissenting). Respondent expressed willingness to testify, but refused to waive immunity. He had been engaged in the trial of negligence cases. When he was requested to appear before the Special Term, he consulted with counsel. Counsel was a lawyer of large and varied experience, highly regarded by bench and bar for ability and integrity. Respondent told counsel that the talk in Staten Island was that the investigation concerned criminal activities of lawyers, jury fixing, ambulance chasing, and other illegal and unlawful practices; that there was " poison " in Staten Island. His counsel advised him that he should offer to testify and tell everything that he knew, openly and above board. Counsel stated to him that, in all his experience as an attorney of forty years' standing, he never permitted any client or advised a client to sign a waiver of immunity, particularly a waiver of immunity such as that which was offered for signature in this case. Counsel advised respondent that he would absolutely be within his rights to refuse to sign such a waiver. Respondent says that he believed in and respected the advice of his counsel. While he had no fear of

anything that he had done, he had in mind that he had been practicing law for fifteen years and, possibly, had created enemies. He did not know what might happen; people might come before the investigation and say things against him of which he was absolutely innocent and yet he would be confronted with them. He had heard that Mr. Cosgrove, who was an associate in the investigation, had said adverse things about him.

Respondent acted in good faith in refusing to waive immunity. (See *Matter of Ellis*, 258 App. Div. 558.) To compel him to waive immunity would mean the loss of his constitutional privilege. As in *Matter of Ellis* (*supra*), the charge is considered from the standpoint that he refused to waive immunity on the ground it would incriminate him. For the reasons stated in *Matter of Ellis*, respondent, having invoked his constitutional privilege in good faith, is not amenable to discipline by this court.

The motion to confirm the report of the official referee should be denied and the charges dismissed.

TAYLOR, J., concurs with LAZANSKY, P. J.

Respondent suspended from the practice of the law for a period of six months.